## THE STATE *vs.* FRANKLIN P. BARROWS.

It seems to be required by principle that an attorney, learning from the client in a professional consultation, or in any other manner, that the latter proposes to commit a crime, should be holden to owe a higher duty in the matter to society, and to the party to be affected by his crime, than that which he owes to his client.

But this exception to the general rule protecting the communications of a client, should be applied only to such statements as afford reasonable evidence of the guilty intent.

A woman employed an attorney to defend her in a suit brought by her husband for a divorce on the ground of adultery. A criminal prosecution was pending against the man who was charged with the adultery, and she told her attorney in one of her consultations about

State *v.* Barrows.

her own case that she should testify in the criminal case differently from what she had stated to him, and she did testify in that case that no such adultery had been committed. Held not to be so clear that she meant that she intended to commit perjury as to make it proper to compel the attorney to disclose the statement.

The rule which protects privileged communications from disclosure is one of public policy and in the interest of justice and its administration, and not one of which only the party making the communication can claim the benefit.

[Argued November 20th, 1884—decided February 9th, 1885.]

INFORMATION for adultery in the Superior Court in Hartford County. Tried to the jury before *Carpenter, J.* Verdict guilty, and appeal by the defendant for error in the admission of evidence. The case is sufficiently stated in the opinion.

*C. E. Perkins* and *J. L. Barbour,* for the appellant.

*W. Hamersley,* State's Attorney, for the State.

BEARDSLEY, J. Upon the trial of this case, which was a prosecution for adultery alleged to have been committed by the accused with one Mrs. Eaton both before and after January, 1884, she was called as a witness for the defense, and testified that the accused did not commit the crime with her. Upon cross examination she stated that a petition for divorce brought by her husband, alleging adultery, had been served upon her in January, 1884. Upon re-examination by the defendant's counsel, she stated that when she was informed that a hearing upon the petition was about to take place, she employed Mr. Jones, a lawyer residing in Hartford, as her counsel, to defend against the petition, telling him when she employed him that she did not wish her husband to procure a divorce on the ground of adultery. Mr. Jones was thereupon called as a witness in rebuttal, and after stating that the interview referred to by Mrs. Eaton was one of several, in all of which their conversation was concerning matters in respect to which she stood to him in the relation of client, was required by the court, against the objection of Mrs. Eaton, to answer this question: "State whether she proposed to go on the stand and testify to anything different from what she stated to

you?" Mr. Jones answered affirmatively, and the only question in the case is, whether he was properly required to answer, in view of the rule protecting communications made by client to counsel.

The state claims that the declaration of Mrs. Eaton, to which Mr. Jones was required to testify, was substantially a statement by her that she intended to commit the crime of perjury, and hence was not privileged. We are not called upon in this case to decide the question which has been discussed by counsel, whether an attorney to whom a criminal project has been confided by his client may divulge it. It is a question which has not, as presented in this case, been passed upon, so far as we are aware, by the courts of last resort in England or in this country.

It would seem to be required by principle that an attorney knowing, no matter from what source, that his client is about to commit a crime, should be holden to owe a higher duty to society, and especially to the intended victims of his client's crime, than even that which he owes to him. But it seems to us that if this exception to the rule is to be made, it should apply only to such statements of the client as offered reasonable evidence of his guilty intent.

The absence of guilty intent, if none existed, could only be made to appear by a cross-examination, which would, in many cases, lead to a disclosure of all the statements of the client.

We do not think that the statement of Mrs. Eaton, that she intended to testify to something different from what she had stated to Mr. Jones, was necessarily an assertion that she intended to testify falsely, or ought to be so regarded. It does not appear in what connection or under what circumstances it was made. There had been several consultations between them, and she might, in the course of them, have purposely or mistakenly made some statement which she was not willing to make under oath.

The state also claims that Mrs. Eaton, by her voluntary testimony, that when she called upon Mr. Jones she told him that she did not wish her husband to procure a divorce on the ground of adultery, had waived her privilege, and

State v. Barrows.

so authorized him to disclose whatever she said to him in consultation. But this statement was obviously made to inform Mr. Jones of her object in calling upon him, and was preliminary to any consultation—indeed nothing more than was implied in retaining him.

The case of *Chirac* v. *Reinicker*, 11 Wheaton, 280, cited by the counsel for the state, was an action for mesne profits following an action of ejectment. The question put to counsel in that case was, whether the defendant employed him to conduct the ejectment for him, as landlord, of the premises. It was ruled that he should not answer it, upon the ground that it had an important bearing upon his liability in that action.

The State also claims that if the court erred in admitting the question referred to, it was an error which does not entitle the accused to a new trial, because the right of Mrs. Eaton only, and not that of the accused, was violated by the evidence of Mr. Jones. But the rule which holds communications by client to counsel privileged from disclosure, is one of public policy, in the interests of justice, and to maintain its administration. *Goddard* v. *Gardner*, 28 Conn., 172; *Barnes* v. *Harris*, 7 Cush., 576.

In the case of *Bacon* v. *Frisbie*, 80 N. York, 394, in which an attempt was made to prove the statements of Ratnour, a co-defendant with Frisbie, by his attorney to whom he made them, the court, rejecting the evidence, say, (p. 401):—" Had Ratnour not been a party to the action and so had no right to be at the trial and object, yet the objection would lie in the mouth of Frisbie, who by it would but call upon the court to keep untouched a rule of public policy made and to be kept, not especially for his good but for that of all men."

There was error in the admission of the evidence and a new trial is granted.

In this opinion PARK, C. J. and GRANGER, J. concurred; LOOMIS, J. dissented; CARPENTER, J. having tried the case in the court below, did not sit.