## IN RE APPLICATION FOR ORDER TO SHOW CAUSE IN MATTER OF DEATH OF JOEL WILLNER

Superior Court    New Haven County
(At Waterbury)

Present:  Hon. FRANK P. McEVOY, Judge.

William B. FitzGerald, Ass't State's Attorney for Petitioner John T. Monzani, Coroner.

Alfred Finkelstein for Perry Graicerstein.

### MEMORANDUM FILED MARCH 18, 1936.

McEVOY, J.  This application made by John T. Monzani, Esq., Coroner for New Haven County at Waterbury, came to this Court and recites, substantially, that the applicant on March 5, 1936, made an inquest into the death of Joel Willner,

a male infant, who came to a sudden, violent and untimely death on March 4, 1936, and that, in the course of that inquest, material evidence relating to the question of whether or not the said death was caused by the criminal act of another or others was in the possession of Perry Graicerstein, of Waterbury, and further reciting that subpoena had been issued requiring the said Perry Graicerstein to appear and exhibit and deliver to the Coroner a letter claimed to be in his possession, and that he had refused to produce the letter or deliver it to the Coroner.

On that application an order was issued requiring Perry Graicerstein to show cause why he should not exhibit and deliver the letter to the Coroner. In response to that order Perry Graicerstein, Esq., appeared personally and by his attorney, Alfred L. Finklestein, Esq., in the Superior Court at Waterbury on March 18, 1936, at 9:30 A. M.

The Coroner appeared in person and was represented by William B. Fitzgerald, Esq., Assistant State's Attorney at Waterbury. A statement of facts was agreed on as follows:

"I think we can agree, Mr. Fitzgerald, Mr. Graicerstein is now and has been for some time an attorney in good standing, practicing in the City of Waterbury; that some time prior to the death of Morris Willner, he acted as counsel for Mr. Willner; that at the present time he is counsel for Mr. Willner's widow and also for any estate that may develop as a result of Mr. Willner's death; also that after Mr. Willner's death Mr. Graicerstein, as attorney for Mr. Willner, received a letter addressed to him by Mr. Willner and received by him after Mr. Willner's death; that the Coroner made demand upon Mr. Graicerstein for the production of that letter and that Mr. Graicerstein refused to turn the letter over to the Coroner on the ground it was a privileged communication to the attorney, and he has maintained that position."

It also appears and is conceded that Attorney Graicerstein feels that the letter in his possession is a confidential communication and that it is privileged as between attorney and client.

The Coroner is an officer of the Court appointed by the Judges of the Superior Court.

By virtue of the provisions of **Section 255, G. S. 1930** the

Coroner is endowed with the general power of securing evidence, and in accordance with the provisions of this section he may "compel the attendance and testimony of witnesses by subpoena and capias issued by him or other proper authorities, . . ., punish for contempt to the same extent as justices of the peace may in criminal cases. . . . ."

It was, evidently, the purpose of the legislature to enable the Coroner to act speedily and specifically.

The respondent, Perry Graicerstein, by virtue of his position as a practicing attorney, is also an officer of the Court and his conduct in the present situation indicates that he has a keen realization of the duty to his client which is placed upon him by the rules of ethics and other rules generally governing the conduct of attorneys respecting their relations with their clients. Ordinarily communications by clients to attorneys made for the purpose of seeking or securing advice are privileged and may not be disclosed or made public by the attorney so consulted.

To this general rule there are various exceptions. One of the exceptions is that an attorney, "learning from a client in a professional consultation, or in any other manner that the latter proposes to commit a crime, should be holden to a higher duty in the matter to society, and to the party to be affected by his crime, than that to which he is owing to his client." **State vs. Franklin P. Barrows, 52 Conn., 323 at page 325.** This exception is again qualified by the statements that "if this exception to the rule is to be made, it should apply only to such statements of the client as offered reasonable evidence of his claimed intent."

The claim of the Coroner in this situation is that the communication alleged to have been made by the client, Maurice Willner, to Perry Graicerstein, as an attorney, tends to prove that the communicating client, Maurice Willner, did have a guilty intent.

The communication in question has been delivered to the keeping of the Court and has been marked Exhibit A for identification. It has not been delivered or shown to the Coroner.

A careful examination of the Exhibit A for identification discloses that, in addition to the claimed statements respecting

the intent, it also contains reference to private business matters of the client, Maurice Willner, and certain statements affecting the private relations of the communicant, Maurice Willner, and the attorney Perry Graicerstein.

Under these circumstances it would not be consistent with any recognized practice and procedure in our State to permit anyone to inspect or examine such parts of Exhibit A for identification as refer to the private or personal matters of the deceased client.

Public policy requires that such communications be kept secret, and not only that its right of privilege be respected, but that the Court see to it that communications between counsel and client are treated as private. **Doyle vs. Reeves, 112 Conn. 521.**

The first page of Exhibit A for identification, which is the communication from Maurice Willner to Attorney Perry Graicerstein contains matter which the Coroner ought to be permitted to take into consideration and to use as part of the facts in his investigation under the provisions of Section 255 previously quoted, and it will be observed that so much of Exhibit A for identification as is included in this memorandum refers to the proposed actions of two people, as the pronoun "we" is used. It is not therefore limited to the express intent or statement respecting the sole action of the writer.

For the convenience of the Coroner and so that the precise evidence, to which he seems to be entitled, may become part of his record, so much of Exhibit A for identification as is deemed pertinent and admissible as part of the evidence of the Coroner is attached hereto and marked Exhibit B.

Mr. Graicerstein, the respondent, has shown a definite appreciation of the responsibility imposed upon him by his oath as an officer of this Court, and it would seem that it was not only his right but his duty to refuse to submit any of his client's papers for examination on the part of anyone until he had duly submitted the matter to a proper tribunal for adjudication; and for his attitude and for his whole course of conduct in this difficult matter, he is entitled to the commendation of the Court, of which he is an officer.

## EXHIBIT B

Perry Graicerstein

Perry

This is to let you know that we have reached the end of the rope.We have decided to have it all over with and end all of this struggle and aggravation.

You will probably be the first one to know about what we have done. Just as soon as you receive this letter, rush up to my house and go in through the garage door but make sure you leave the garage door open so you won't get the poison.

MAURICE WILLNER.