[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs bring this action alleging that the defendant owes them $3000. in unpaid rent under a written lease for a condominium unit. The parties also entered into a written agreement whereby the defendant was to purchase the condominium unit at the expiration of the lease. Copies of both the lease and the purchase agreement are attached to the complaint.
In his answer to the complaint, the defendant filed four special defenses and a ten-count counterclaim seeking monetary damages, refund of a security deposit, attorneys' fees, punitive damages, treble damages and other relief. The first special defense is that the plaintiffs implicitly or explicitly represented to the defendant that the condominium and its facilities and common areas would be satisfactorily maintained during the term of the lease; however, the plaintiffs allegedly breached the lease agreement by failing to maintain the condominium and its facilities and common areas.
In the second special defense, the defendant alleges that because conditions had deteriorated at the condominium, he offered near the expiration of his lease to continue to rent the condominium for another year at a reduced rental, including one month's free rent. The defendant alleges that he assumed that the plaintiffs had accepted the offer, and, therefore, he tendered reduced monthly rent in the form of a $600. check on or about November 15, 1991. The defendant alleges that the plaintiffs cashed the tendered check, and that this constitutes an accord and satisfaction of all previous claims in regard to the defendant's alleged breach of the lease and purchase agreements.
In the third special defense, the defendant alleges that the plaintiffs' act of cashing the $600. check induced the defendant to believe that the plaintiffs had accepted his proposed lease arrangement, and that the plaintiffs' conduct "estops them from seeking any past arrearages due under the [l]ease [a]greement."
In the fourth special defense, the defendant alleges that the plaintiffs' act of cashing the $600. check constitutes the acceptance of the defendant's proposal, and a waiver of the plaintiffs' right to collect any arrearages due under the lease agreement.
In the first count of the counterclaim, which is similar to the first special defense, the defendant alleges that the defendant and the plaintiffs entered into the lease and purchase agreements "with the explicit and/or implicit understanding" that the plaintiffs would be responsible for the maintenance of the condominium unit's interest in the common areas. The defendant CT Page 6518 alleges that the conditions in the common areas deteriorated, hence the plaintiffs breached the lease agreement by not providing the property to the defendant in the same condition as represented. In the second count, the defendant alleges that the plaintiffs were unjustly enriched by their retention of "rental overpayments", where the property was in worse condition than the represented condition.
In the third count of the counterclaim, the defendant alleges that the plaintiffs' practices as alleged in counts one and two were unfair and oppressive and violated Connecticut General Statutes 42-110a et seq., the Connecticut Unfair Trade Practices Act ("CUTPA").
In the fourth count, the defendant alleges that the purchase agreement required the plaintiffs to maintain the property and to take other actions in order to be able to close the sale of the property; however, the plaintiff failed to meet these requirements. The defendant alleges that pursuant to the terms of the purchase agreement, the defendant is entitled to the return of his $5,000. "security" deposit because the parties were unable to close the sale of the property. The defendant alleges that the plaintiffs have not returned the deposit, and have breached the purchase agreement. The defendant in the fifth count alleges that the plaintiffs were unjustly enriched by the retention of the $5000. deposit.
In the sixth count, the defendant alleges a second CUTPA cause of action. The defendants contend that the plaintiffs' actions with respect to the $5000. deposit were unfair and oppressive and a violation of CUTPA.
In the seventh count, the defendant alleges that by retaining the $5000. deposit the plaintiffs have committed theft and conversion in violation of Connecticut General Statutes52-564.
In the eighth and ninth counts, the defendant alleges that the plaintiffs brought a second action against the defendant in the Stamford Superior Court in which the plaintiffs allege that the defendant breached the purchase agreement by failing to close the purchase of the property. In the eighth count, the defendant alleges that the plaintiffs brought the Stamford action without probable cause in violation of Connecticut General Statutes52-568(a), and seeks double damages. In the ninth count, the defendant alleges that the plaintiffs brought the Stamford action without probable cause and with a malicious intent to unjustly vex and trouble the defendant in violation of General Statutes52-568(a), and seeks treble damages. CT Page 6519
In the tenth count, the defendant realleges the allegations of the second special defense with regard to the existence of an accord and satisfaction, and alleges that the plaintiffs breached the terms of the accord and satisfaction by demanding additional payments, threatening suit, and forcing the defendant to vacate the property. Attached to the answer, special defenses and counterclaim are copies of the lease agreement and purchase agreement.
The plaintiffs have now moved to strike all four special defenses and all ten counts of the counterclaim alleging that each of the defenses and each of the claims is legally insufficient. The function of a motion to strike is to challenge the legal sufficiency of the allegations as set forth in the pleadings. Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432
(1989). The motion to strike admits all facts well pleaded. Id. It does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. Blancato v. Feldspar Corp.,203 Conn. 34, 37, 522 A.2d 1235 (1987). The court must construe the facts alleged in the manner most favorable to the pleader. Rowe v. Godou, 209 Conn. 273, 278, 550 A.2d 1073 (1988). In passing upon a motion to strike, the trial court should only consider the grounds specified by the moving party; Blancato v. Feldspar, Corp., supra, 44; Morris v. Hartford Courant Co.,200 Conn. 675, 682, 513 A.2d 66 (1986); and only the facts alleged in the challenged pleadings. King v. Board of Education, 195 Conn. 90,93, 486 A.2d 1111 (1985).
Where the parties include contracts as exhibits to their pleadings, such contracts may be referred to on a motion to strike, because the contracts are incorporated into the pleadings. Benoit v. Connecticut Trails Council of Girl Scouts, Inc., 1 CTLR 47, 48 (November 22, 1989, Kulawiz, J.). See also Practice Book 141, which provides that a document annexed to a pleading becomes "a part of" the pleading; Warner v. Konover,210 Conn. 150, 553 A.2d 1138 (1989) (In overturning the trial court's action of granting a motion to strike, the Supreme Court considered the terms of a lease which was attached to the complaint.)
Both the first special defense and the first count of the counterclaim arise out of the alleged "implicit and/or explicit" representation of the plaintiffs with respect to the condominium unit and the common areas. The plaintiffs move to strike both the defense and the first count of the counterclaim because of paragraph 5 of the lease, which reads, "Condition of Premises Upon Taking Possession. We make no representation or promise as to the condition of the condominium unit except as expressly set forth in this lease." The plaintiffs argue that this provision bars any claim for misrepresentation. The motion to strike the CT Page 6520 first special defense and the first count of the counterclaim is denied. The court notes first that this lease provision applies to the condominium unit only and makes no reference to the common areas. Secondly, it appears that this provision relates only to the condition of the condominium unit at the outset of the lease, not to its maintenance throughout the lease term. Finally, it would be inappropriate for the court to interpret the lease agreement in ruling upon the motion to strike, because this would require the court to assess the intention of the parties. The court cannot look beyond the pleadings in ruling on a motion to strike. The defendant has alleged the existence of an agreement, and the alleged breach of this agreement sufficiently states a special defense and claim for breach of contract.
The plaintiffs also move to strike the second count of the counterclaim, claiming that this count, based on unjust enrichment in retaining rental overpayments, is legally insufficient. This contention also is based on paragraph 5 of the lease and is therefore without merit. The second count does state a cause action for unjust enrichment.
 `[T]he unjust enrichment ] doctrine is based upon the principle that one should not be permitted unjustly to enrich himself at the expense of another but should be required to make restitution . . . for property received, retained or appropriated . . . . The question is: Did . . . the party liable, . . . to the detriment of someone else, obtain something of value to which he was not entitled?' (Citations omitted).
Burns v. Koellmer, 11 Conn. App. 375, 384, 527 A.2d 1210 (1987). The motion to strike the second count of the counterclaim is denied.
Both the second special defense and the tenth count of the counterclaim arise out of the alleged accord and satisfaction between the parties based on the acceptance and endorsement of the $600. check.
 `An accord is a contract . . . for the settlement of a claim by some performance other than that which is due. Satisfaction takes place when the accord is executed.' . . . The defense of accord requires that he defendant allege and prove `a new agreement with a new consideration.' (Citations omitted).
CT Page 6521
Gillis v. Gillis, 21 Conn. App. 549, 552, 575 A.2d 230 (1990). The plaintiffs argue that the defendant's allegations are legally insufficient to allege an accord and satisfaction because the lease agreement states in paragraph 12, entitled "Modification and Cancellation": "Any modification, cancellation, or surrender of this lease must be in writing and signed by both . . ." parties.
The defendant argues that the court may not consider the terms of the contract because the court must accept the truth of the allegations of the counterclaim count. However, pursuant to Benoit v. Connecticut Trails Council of Girl Scouts, Inc., supra, and Practice Book 141, the court may consider contracts which are attached to the pleadings, since they are incorporated into the pleadings.
Paragraph 12 of the lease is quite clear in setting forth the requirements for any modification of the lease. The provision is unambiguous and does not require any reference to the intention of the parties for interpretation. In the second special defense and the tenth count of the counterclaim, the defendant does not allege that the terms of the accord were written and signed. Therefore, because the allegations of the accord do not conform to the requirements for an accord under the lease, the allegations are insufficient to state either a special defense or a cause of action. Accordingly, the motion to strike the second special defense and the tenth count of the counterclaim is granted.
The defendant's third and fourth special defenses raise defenses of estoppel and waiver. In their motion to strike, the plaintiffs merely make the blanket claim that all the special defenses and all counts of the counterclaim are legally sufficient. In their memorandum of law in support of the motion to strike, the plaintiffs wholly fail to address the third and fourth special defenses.
Practice Book 155 provides, "Each motion to strike must be accompanied by an appropriate memorandum of law citing the legal authorities upon which the motion relies." Practice Book 155. In Roy v. Borgesano, 3 CSCR 358 (March 21, 1988 Purtill, J.), the court held that a memorandum of law in support of a motion to strike which does not cite any legal authority does not comply with Practice Book 155, and that this failure to comply with the Practice Book requires the court to deny the motion to strike.
In the present case, the plaintiffs have not cited any legal authority in support of their motion to strike the third and fourth special defenses. Nor have they addressed these defenses at all. Accordingly, the plaintiffs are not in compliance with CT Page 6522 Practice Book 155, and, pursuant to the holding of Roy v. Borgesano, supra, and because of plaintiffs' apparent abandonment of their claims with respect to these defenses, the plaintiffs' motion to strike the third and fourth special defenses is denied.
Both the third count of the counterclaim, based on the lease, and the sixth count of the counterclaim, which arises under the purchase agreement, allege violations of CUTPA. The plaintiffs have moved to strike both counts, contending that CUTPA does not apply to the private, one-time sale of a single family residence. (The plaintiffs do not distinguish between the count based on the lease and the count based on the purchase agreement.) Neither party has briefed this CUTPA issue thoroughly.
No Connecticut appellate level cases address the issue of the applicability of CUTPA to one-time residential real estate transactions, and the Superior Courts are split on the issue. See, e.g., Piscatelli v. Hird, 3 CTLR 453 (March 14, 1991, McKeever, J.) (Allegations that a seller of real estate wrongfully refused to return the buyer's deposit are sufficient to state a CUTPA claim.) Oat v. Whittle, 3 CTLR 229 (January 22, 1991, Austin, J.) (A single real estate transaction may be the basis of a CUTPA claim); Sikorsky v. Nelson, 2 CTLR 605 (October 22, 1990, Austin, J.) (Allegations that a seller of real estate wrongfully refused to return the buyer's deposit are sufficient to state a CUTPA claim.); Skinner v. Till, 3 CTLR 627 (April 16, 1991, Teller, J.) (CUTPA does not apply to a single transaction for the purchase of residential real estate, where neither the plaintiff nor the defendant were in the real estate business.) McCarthy v. Fingelly, 4 CTLR 222 (July 1, 1991, Katz, J.) (CUTPA does not apply to a one-time rental of a personal residence, where the parties were not in the real estate business.) Oppici v. Arata, 4 CTLR 625 (September 23, 1991, Hadden J.) (CUTPA does not apply to the sale of one condominium by private individuals).
Based on the wording and definitions of CUTPA, this court finds that CUTPA does apply to the real estate transaction at issue before this court. Connecticut General Statutes42-110a(4) defines "trade" and "commerce" for purposes of the act as including "the sale or rent or lease, the offering for sale or rent or lease . . . of . . . any property, tangible or intangible, real, personal or mixed, and any other article, commodity or thing of value in this state." The legislature has thus defined trade or commerce to include the sale or rental of a single property or single commodity. There is no requirement that a person be in the business of selling such property or commodities in order to be engaged in trade or commerce within the meaning of the act. CT Page 6523
Connecticut General Statutes 42-110g confirms this interpretation by providing a cause of action for any person who has suffered an ascertainable loss of money or property as a result of "the use or employment of a method, act or practice. . ." (Emphasis added.) A single act is sufficient to give rise to a CUTPA claim. Moreover, the court also notes the statutory requirement that the CUTPA provisions are remedial and should be liberally construed. Connecticut General Statutes 42-110b(d). The motion to strike the third and sixth counts of the counterclaim is denied.
The fourth count of the counterclaim alleges a cause of action for breach of the purchase agreement for failure to maintain and deliver the condominium unit in satisfactory condition at the time of closing. The plaintiffs contend that the allegations of this count are legally insufficient in light, of paragraph 10 of the purchase agreement which provides:
 It is understood that the Property will be conveyed in its present "as is" condition, . . . without any warranty or representation of any kind whatsoever by the [plaintiffs] . . . [Defendant] will purchase the Property in whatever condition it exists at the time of the closing, the [defendant] assuming responsibility for any wear and tear to the Property during the period of the Lease.
The defendant responds by claiming that the motion would require the court to construe the contract, which is improper on a motion to strike.
Although part of the cited portion of paragraph 10 of the purchase agreement appears to contradict the defendant's allegation that the plaintiffs were to maintain the property, that part of paragraph 10 which states "[i]t is understood that the Property will be conveyed in its present `as is' condition. . ." could be construed to impose some obligation on the plaintiffs with respect to maintaining the property to prevent any deterioration from its "as is" condition other than normal wear and tear on the date of the agreement, which was a full year prior to the scheduled closing date. Resolution of this issue would require the court to construe the agreement in light of the intention of the parties and the surrounding circumstances. Such a determination would require the court to extend its inquiry beyond the pleadings, which would be inappropriate on a motion to strike. In addition, the fourth count also alleges that the plaintiffs failed to take "other actions" required for closing. The court cannot strike the entire count where such allegations exist. Accordingly, the motion to strike the fourth count of the CT Page 6524 counterclaim is denied.
Counts five and seven also are based on the alleged breach of the purchase agreement by the plaintiffs with respect to the condition of the condominium unit. The fifth count contains the same allegations as the fourth count, but with the additional allegation, that the retention of the $5000. deposit constitutes unjust enrichment. The seventh count is based on the same alleged breach of the purchase agreement, but with the additional claim that retention of the security deposit constituted theft and conversion. The plaintiffs' motion to strike these counts suffers from the same deficiencies set forth above with respect to the fourth count. The motion to strike the fifth and seventh counts of the counterclaim is denied.
The eight and ninth counts of the counterclaim set forth causes of action for vexatious litigation, claiming that the second suit brought by the plaintiffs against the defendant, in Stamford Superior Court, was brought without probable cause. The plaintiffs move to strike these counts contending that they are legally insufficient because the defendant has not alleged that the Stamford action terminated in the claimant's favor. (The parties concede that the Stamford action is still pending and has not gone to judgment.)
A claim for vexations litigation requires a plaintiff to allege that the previous lawsuit was brought without probable cause and that it terminated in favor of the current plaintiff. Blake v. Levy, 191 Conn. 257, 263 (1983), citing Vandersluis v. Weil, 176 Conn. 353, 356 (1978); Calvo v. Bartolotta, 112 Conn. 396,397 (1930); Schaeffer v. O. K. Tool Co., 110 Conn. 528, 532
(1930). The defendant's citation to Pinsky v. Duncan, 898 F.2d 852
(2d Cir. 1990) and Hydro Air of Conn. Inc. v. Versa Technologies, 99 F.R.D. 111 (D.Conn. 1983), is unavailing. Although the federal court system may have adopted a different rule regarding vexatious litigation claims in order to foster judicial economy in the federal court system, the requirements for state court actions are clearly set forth in Blake v. Levy, supra.
Moreover, the facts of the federal cases cited by the defendant are readily distinguishable. In those cases, the defendant claimed by way of counterclaim that the allegations of the complaint in the very same action were made without probable cause. That is not the situation here. In this case, the defendant claims in his counterclaim that the separate suit brought by the plaintiffs against the defendant in Stamford Superior Court was brought without probable cause. The interests of judicial economy would not be served by having this court hear not only the complaint in this action, but a counterclaim CT Page 6525 alleging that a second complaint in another action was brought without probable cause. The motion to strike the eighth and ninth counts of the counterclaim is granted.
VERTEFEUILLE, J.