[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM ON PLAINTIFF'S MOTION TO COMPEL ATTORNEY-CLIENT PRIVILEGE
In this case the parties have a dispute over insurance coverage.* HSB is a member of IRI which acts as a joint underwriters association. After the dispute arose as to whether a sizeable loss covered by an IRI policy was reinsured by HSB, both sides agreed to an arbitration process. A so-called Loss Committee was to choose the arbitrators that were to arbitrate certain aspects of the dispute. HSB brought suit in this court seeking a stay of the arbitration process claiming that the arbitration panel was not selected in accordance with the agreement and that IRI had improperly influenced the Loss Committee in the selection of the arbitrators. HSB seeks discovery of communications between IRI and its attorneys in so far as they show a direct or indirect attempt to influence the Loss Committee's selection procedures. IRI claims the attorney-client privilege.
I accept for the purposes of this discussion that a fiduciary relationship of some sort existed between HSB and the Loss Committee regarding the selection and procedures to select the arbitrators for this phase of the arbitration process. However, HSB cannot deny (see HSB 11/24/94 memorandum, page 50) that an adversarial relationship exists and existed between HSB and IRI or more exactly the IRI staff concerning both the underlying matter to be arbitrated and the immediate dispute over selection of the arbitrators.
That is, for the purposes of the attorney-client privilege analysis we have four entities (1) HSB; (2) the IRI Loss Committee; (3) IRI or the IRI staff; (4) counsel to IRI or the IRI staff. If we assume for the purposes of discussion that indirect or direct contact by the IRI staff with the Loss Committee was improper, that does not mean IRI has waived the attorney client privilege as regards any advice it may have received from counsel concerning such contact either as regards its propriety, substance, or even CT Page 12325 implementation. Even if correspondence between IRI and its counsel were to be direct evidence of such IRI — Loss Committee contact how can that be said to be a waiver of the IRI privilege as regards communications with its own counsel? True that may mean HSB is deprived of the opportunity to bring some pertinent facts to the court's attention which it otherwise could have but that is hardly a reason to relax the operation of the attorney-client privilege. As said in McCormick on Evidence at § 87, page 314: "The consequent loss to justice of the power to bring all pertinent facts before the court is. . . . outweighed by the benefits to justice (not to the individual client) of a franker disclosure in the lawyer's office."
HSB refers to the case of Garner v. Wolfunbarger,430 F.2d 1093 (CA 5, 1970) which involved a derivative stockholders' action against management in which both sides claimed to be acting in the corporation's interest. The whole point of Garner, it seems at least to me, is a "mutuality of interest" claim (see McCormick supra at page 321) asserted by both parties concerning the activity of the corporate entity. How can there be said to be any mutuality of interest directed toward the activities of a common corporate entity here. This is a loose association of companies wherein IRI acts as a joint underwriting association. Here HSB reinsured an IRI policy. This policy insured the Monsanto Company for various losses described in the policy and included in its coverage a Monsanto facility in Texas. A loss occurred at that plant and a dispute arose between IRI and HSB about whether the loss was reinsured by HSB. IRI and HSB then entered into a settlement agreement which provided for arbitration. There is no mutuality of interest between HSB and IRI as regards this dispute; the need for arbitration is a reflection of that. Can HSB argue that both parties have a mutuality of interest as regards the beneficent and fair operation of the mutually agreed on arbitration process and thus the operation of the Loss Committee? Can HSB rely on some such theory to fall under the protection of Garner? Only I think if this court were prepared to hold that the attorney-client privilege doesn't apply where disputes arise over the implementation of the arbitration process. The situation before the Garner court would be like this case if in Garner after a dispute between management and stockholders arose both sides agreed to arbitrate then a CT Page 12326 controversy arose over the selection of the arbitrators. The reasoning in Garner then wouldn't apply because the mutuality of interest between IRI and a member company has been put aside at least for the purposes of resolving this dispute.
McCormick notes that in a variety of situations courts have found "the mutuality of interest" between management and shareholders relied on by Garner to be lacking. ThusWeil v. Investment/Indicators Research 2 Management,647 F.2d 18 (CA 9, 1981) rejected the Garner rationale where the plaintiff shareholder sought to recover personally. Here too HSB and IRI are involved in a serious dispute over their mutual rights and obligations; nothing about their relationship would require IRI to disclose its privileged communications to HSB. Also the court has no information to warrant a conclusion that in this dispute HSB is or even purports to be representing the interests of all the other members of the association. Perhaps more to the point, the fact that HSB is a part of a loose association of companies and a member of IRI has nothing to say about IRI's ability to claim the privilege after a dispute has arisen with HSB requiring resolution through arbitration. Any mutuality of interest ceased with the dispute. That one or the other parties had contact with the Loss Committee and whether that is proper has nothing to do with the right of the disputing parties to keep communications with their lawyers regarding these matters confidential. HSB also claims the privilege cannot be asserted because of the so-called crime-fraud exception to the attorney-client privilege. Connecticut still follows the old variation of the rule which limited the exception to the privilege where the communication involved commission of a crime not merely civil fraud, Supplee v. Hall,75 Conn. 17, 22-23 (1902). Tait and LaPlante in Handbook onConnecticut Evidence suggest that our state should follow modern authorities and apply the exception as to civil fraud as well, § 12.5.8, p. 449. Assuming Connecticut will follow this course of action I still find difficulties with applying the exception here.
The crime-fraud exception only applies when the statements of the client offer reasonable evidence of the client's guilty intent; there must be an assertion of an intent to commit a crime (or here a fraud if the exception were to be extended), State v. Barrows, 52 Conn. 323, 325
CT Page 12327 (1884). Thus McCormick, supra, says at § 95, page 350.
 Accordingly, it is settled under modern authority that the privilege does not extend to communications between attorney and client where the client's purpose is the furtherance of a future intended crime or fraud." (emphasis added).
Also the Rev. Unit Rules of Evidence (1986) 502(d)(1) applies the exception only where the client knew or reasonably should have known the act to be a crime or fraud.
IRI vigorously contests HSB's assertion that contact with the Loss Committee would be improper. I don't wish to prejudge an important dispute between the parties through the vehicle of deciding a motion to compel discovery. As I told counsel I reserve the right to review my decision. If I decide I was incorrect in this ruling I will give HSB counsel added time to review any documents released to them and a reasonable time to follow through with any further discovery or to further preparation necessitated by the late disclosure.
Also counsel should note that our court has said that "a trial court should honor the privilege if and only if `the injury that would inure to the (attorney-client) relation by the disclosure of the communication is greater than the benefit thereby gained for the correct disposal of litigation . . . 8 Wigmore, supra § 2285(4) p. 527'", Statev. Cascone, 195 Conn. 183, 189 (1985). Having examined this material on an in camera basis I can conceive of scenarios where disclosure might be necessary since I am also the trier of fact who may be required to hear conflicting evidence and make findings of fact. I will make no decisions with regard to such an issue of course without advising counsel and hearing further argument.
Finally as regards 1P00069 in light of the information disclosed in the "cc" reference I do not believe the privilege can be claimed. As to this dispute at least one of the entities mentioned would be a third party and thus there has been a waiver of the privilege. I would CT Page 12328 request IRI to disclose IP00069 to opposing counsel. To all other documents the privilege applies.