ANTHONY F. KING *v.* BOARD OF EDUCATION
OF THE TOWN OF WATERTOWN
(12441)

PETERS, C. J., HEALEY, PARSKEY, SHEA and SANTANIELLO, Js.

Argued November 9, 1984—decision released January 29, 1985

*Donald J. Deneen,* for the appellant (plaintiff).

*Peter W. Benner,* with whom was *Thomas M. Bounty,* for the appellee (defendant).

SHEA, J. The plaintiff has appealed from a judgment for the defendant that was rendered by the court pursuant to Practice Book § 157[1] after a motion to strike the first count of the complaint had been granted. The

---

[1] "[Practice Book] Sec. 157. ——SUBSTITUTE PLEADING; JUDGMENT. Within fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading; provided that in those instances where an entire complaint, counterclaim or cross complaint has been stricken, and the party whose pleading has been so stricken fails to file a new pleading within that fifteen-day period, the court may upon motion enter judgment against said party on said stricken complaint, counterclaim or cross complaint."

second count was withdrawn prior to judgment.[2] The count at issue purported to set forth a cause of action for indemnification, pursuant to General Statutes § 10-235 (a),[3] for legal fees and costs incurred by the plaintiff in a law suit brought by the town council against the board of education, the defendant in this action, in which the plaintiff, as superintendent of schools in Watertown, was joined as a necessary party. The trial court concluded that the plaintiff had not sufficiently alleged a claim under the indemnification statute and granted the motion to strike. We find error.

[2] The plaintiff withdrew the second count of the complaint, which claimed certain compensation in lieu of earned vacation time, after the motion to strike the first count had been granted. When the plaintiff refused to plead over with respect to the first count the defendant properly filed a motion for judgment pursuant to Practice Book § 157. See *McInerney* v. *Cecio Bros., Inc.,* 189 Conn. 547, 549, 457 A.2d 303 (1983); *Kilbride* v. *Dushkin Publishing Group, Inc.,* 186 Conn. 718, 724, 443 A.2d 922 (1982).

[3] General Statutes § 10-235 (a) provides: "Each board of education shall protect and save harmless any member of such board or any teacher or other employee thereof or any member of its supervisory or administrative staff, and the state board of education, the board of governors, the board of trustees of each state institution and each state agency which employs any teacher, and the managing board of any public school, as defined in section 10-183b, shall protect and save harmless any member of such boards, or any teacher or other employee thereof or any member of its supervisory or administrative staff employed by it, from financial loss and expense, including legal fees and costs, if any, arising out of any claim, demand, suit or judgment by reason of alleged negligence or other act resulting in accidental bodily injury to or death of any person, or in accidental damage to or destruction of property, within or without the school building, or any other acts, including but not limited to infringement of any person's civil rights, resulting in any injury, which acts are not wanton, reckless or malicious, provided such teacher, member or employee, at the time of the acts resulting in such injury, damage or destruction, was acting in the discharge of his or her duties or within the scope of employment or under the direction of such board of education, the board of governors, board of trustees, state agency, department or managing board; provided that the provisions of this section shall not limit or otherwise affect application of section 4-165 concerning immunity from personal liability. For the purposes of this section, the terms 'teacher' and 'other employee' shall include any student teacher doing practice teaching under the direction of a teacher employed by a local or regional board of education or by the state board of education or board of governors, any student enrolled in a regional

In considering the ruling upon the motion to strike we are limited to the facts alleged in the complaint. *Cavallo* v. *Derby Savings Bank,* 188 Conn. 281, 285–86, 449 A.2d 986 (1982); *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.,* 179 Conn. 541, 545, 427 A.2d 822 (1980); *McAnerney* v. *McAnerney,* 165 Conn. 277, 282, 334 A.2d 437 (1973). The plaintiff was employed by the defendant board of education as superintendent of schools in Watertown under a written contract dated August 21, 1978. Some time after the board had unanimously voted to renew the plaintiff's employment contract for the 1981-82 academic year, an effort was made to resolve a long-standing controversy in the town that had impeded the operations of the board and the educational process. After consultation with a state mediator, another agreement was reached providing for the plaintiff to resign his post effective June 30, 1981, in consideration of certain compensation. This agreement was executed by the plaintiff and the board on November 5, 1980.

vocational-technical high school who is engaged in a supervised health-related field placement program which constitutes all or part of a course of instruction for credit by a regional vocational-technical school, provided such health-related field placement program is part of the curriculum of such vocational-technical school, and provided further such course is a requirement for graduation or professional licensure or certification, any volunteer approved by a board of education to carry out a duty prescribed by said board and under the direction of a certified staff member including any person, partnership or corporation providing students with community-based career education, and any member of the faculty or staff or any student employed by The University of Connecticut Health Center or health services, any student enrolled in a constituent unit of the state system of higher education who is engaged in a supervised program of field work or clinical practice which constitutes all or part of a course of instruction for credit by a constituent unit, provided such course of instruction is part of the curriculum of a constituent unit, and provided further such course (1) is a requirement for an academic degree or professional licensure or (2) is offered by the constituent unit in partial fulfillment of its accreditation obligations and any student enrolled in a constituent unit of the state system of higher education who is acting in the capacity of a member of a student discipline committee established pursuant to section 4-188a."

The town council on December 8, 1980, brought an action against the board of education to enjoin the implementation of the November 5, 1980 agreement. After the board had filed a motion to dismiss the action because of the failure to join the plaintiff, claiming he was an indispensable party, the court ordered him to be joined. Because he was cited in, the plaintiff found it necessary to retain legal counsel to represent him in the action brought by the town council and, accordingly, incurred expenses for legal fees and other costs related to that action. After his demand for indemnification under § 10-235 (a) was refused by the board, the plaintiff commenced this suit.

In the memorandum of law filed in support of its motion to strike, the defendant maintained[4] that

[4] The defendant's motion to strike failed to comply with Practice Book § 154, which requires such a motion to set forth separately "each such claim of insufficiency" of the pleading addressed and to specify distinctly "the reason or reasons for each such claimed insufficiency." The motion filed sought "to strike the First Count of the Complaint, which is legally insufficient to state a claim upon which relief can be granted, for the reasons set forth in the memorandum filed in support hereof." Practice Book § 155, which requires a motion to strike to be accompanied by an appropriate memorandum of law citing the legal authorities upon which the motion relies, does not dispense with the requirement of § 154 that the reasons for the claimed pleading deficiency be specified in the motion itself. That this requirement is not wholly formalistic is well demonstrated in this case where the defendant, as a result of some inquiries by this court during argument relating to whether the plaintiff at the time of signing the agreement that gave rise to the suit by the town council was acting as an agent of the board of education or in his own behalf, attempted to claim that it had raised, as an additional ground for the motion, the failure of the plaintiff to allege that he "was acting in the discharge of his . . . duties or within the scope of employment or under the direction of such board of education." General Statutes § 10-235 (a). The memorandum of law relied upon by the defendant, which is not divided into sections and contains no statement of grounds as such, is a four page discussion of the single ground relied upon by the trial court. In one sentence there is an allusion to the "admitted personal interest" of the plaintiff in defending the injunction action of the town council, but no reference is made to the portion of § 10-235 (a) establishing the scope of employment requirement. In this opinion we consider only the single ground raised by the defendant and relied upon by the trial court.

§ 10-235 (a) "is intended to indemnify employees of the board of education only against acts of the employee which give rise to a damage claim by a third person." The trial court agreed with this construction of the statute, holding "that a positive act by the [employee] which causes an alleged injury to a person is a prerequisite for a right to relief under this statute."

The first enactment in 1945 of the statute which has now become § 10-235 (a) limited the indemnification of school board employees for claims related to the performance of their duties to "financial loss and expense arising out of any claim, demand, suit or judgment by reason of alleged negligence or other act resulting in accidental bodily injury to or death of any person, or in accidental damage to or destruction of property, within or without the school building . . . ." General Statutes, Cum. Sup. 1945, § 234h. Since that time the protection afforded by the statute has been expanded frequently both with respect to the persons covered and the circumstances under which indemnification is available. See Public Acts 1959, No. 521, § 1; Public Acts, Spec. Sess., February, 1965, No. 330, § 43; Public Acts 1971, No. 344; Public Acts 1972, No. 201, § 1; Public Acts 1973, No. 73-651; Public Acts 1978, Nos. 78-54, 78-65; Public Acts 1979, No. 79-63; Public Acts 1981, No. 81-450, § 2. As the statute presently includes "legal fees and costs" specifically among the losses to be indemnified and as the defendant does not question that a superintendent of schools, such as the plaintiff, would qualify as an employee protected by the statute, our remaining concern is with subsequent amendments enlarging the original scope of the circumstances in which indemnification is available. In 1972 an amendment supplemented the original limitation, "alleged negligence or other act resulting in accidental bodily injury to or death of any person, or in accidental damage to or destruction of property" by adding the alter-

native, "or any other acts resulting in any injury, which acts are not wanton, reckless or malicious . . . ." Public Acts 1972, No. 201, § 1. Concern about the exposure of teachers and other employees to civil rights claims was mentioned as one purpose of this addition.[5] Such claims were expressly mentioned in a 1973 enactment amplifying the 1972 amendment to provide, "or any other acts, *including but not limited to infringement of any person's civil rights,* resulting in any injury, which acts are not wanton, reckless or malicious . . . ." Public Acts 1973, No. 73-651.

The position of the defendant that § 10-235 (a) provides indemnification only for damage claims asserted by a third party against school board employees is supported by the language of the statute as it stood prior to 1972, limiting its applicability to negligence or other acts resulting in accidental injury to person or property. The 1972 and 1973 amendments, however, added an alternative, not restricted to physical or accidental injury, that refers to "any other acts" of employees "resulting in *any* injury." (Emphasis added.) We construe the phrase, "resulting in any injury," to refer to any infringement of another's rights, i.e. "a legal injury . . . one violative of established law of which a court can properly take cognizance." *Taylor* v. *Keefe,* 134 Conn. 156, 163, 56 A.2d 768 (1947); see *Gentile* v. *Altermatt,* 169 Conn. 267, 285, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976). The purpose of protecting school board employees against civil rights actions, the principal justification for the 1972 and 1973 amendments revealed by their legislative history, could not fully be achieved if expenses related to defending claims for injunctive relief were not indemnifiable. Not infre-

---

[5] Representative Howard M. Klebanoff, a member of the joint standing committee on education, stated: "This extends the hold harmless provision to cover Civil Rights Actions as long as they are not wanton, reckless and malicious." 15 H. R. Proc., Pt. 5, 1972 Sess., p. 2225.

quently civil rights suits brought pursuant to 42 U.S.C. § 1983 seek injunctions to prohibit prospective violations of federal rights. See, e.g., *Lewis* v. *Blackburn,* 734 F.2d 1000, 1008 (4th Cir. 1984); *R. W. T.* v. *Dalton,* 712 F.2d 1225 (8th Cir.), cert. denied, 464 U.S. 1009, 104 S. Ct. 527, 78 L. Ed. 2d 710 (1983); *Schleiffer* v. *Meyers,* 644 F.2d 656 (7th Cir.), cert. denied, 454 U.S. 823, 102 S. Ct. 110, 70 L. Ed. 2d 96 (1981). Demands for injunctive relief are sometimes joined with claims for damages for past violations. See, e.g., *Tinker* v. *Des Moines Independent Community School District,* 393 U.S. 503, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969); *Zimmerman* v. *Board of Education,* 597 F. Sup. 72 (D. Conn. 1984); *Laurel Park, Inc.* v. *Pac,* 194 Conn. 677, 689, 485 A.2d 1272 (1984). There is nothing in the legislative history to suggest that the purpose of the amendment was to provide indemnification only for legal expenses incurred in defending damage claims, nor has any reason of policy been advanced to justify such a distinction.

We conclude that the legislature intended to make indemnification available to a board of education employee for losses sustained from claims or suits for damages, injunctive relief or both, resulting from any act of the employee performed "in the discharge of his or her duties or within the scope of employment or under the direction of such board"; General Statutes § 10-235 (a); provided that such act is not "wanton, reckless or malicious." Id. It follows that the trial court erred in holding that the act of the plaintiff in signing the agreement for termination of his employment with the board, which later caused him to incur the legal expenses for which reimbursement is sought, did not qualify for indemnification under the statute. The motion to strike, which raised only the ground relied upon by the court,[6] should have been denied.

---

[6] See footnote 4, supra.

There is error, the judgment is set aside and the case is remanded with direction to deny the motion to strike and for further proceedings.

In this opinion the other judges concurred.