[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON THE DEFENDANT'S MOTION TO STRIKE ALL COUNTS OF THE PLAINTIFF'S COMPLAINT
The plaintiff has brought this nine count complaint against the defendant hospital (Mt. Sinai) in which he alleges that he was wrongfully terminated from Mt. Sinai's residence training program in internal medicine, and seeks compensatory, consequential and punitive damages. The defendant has moved to strike the entire complaint on three grounds, first, that the consideration of the plaintiff's claims "would require an impermissible intrusion by the Court into the academic decision-making process", second, that the plaintiff has failed to make the requisite allegations of arbitrary, capricious, or bad faith conduct in his complaint, and third, that counts three, five and nine improperly allege that the defendant tortiously breached its duty of good faith and fair dealing, when such claims are exclusively contractual.
The first count alleges that the plaintiff's termination from the residency program by the defendant constituted a breach of contract (para. 21), and that in doing so, Mt. Sinai acted "maliciously and in bad faith, and with reckless indifference to plaintiff's rights." Para. 22. These two paragraphs and the preceding twenty paragraphs have been incorporated by reference into the other eight counts and form the basis for the various other legal theories advanced in those counts.
The factual allegations upon which all of the plaintiff's legal claims are based as set forth in the first count are as follows: In August of 1983, the plaintiff was offered a position as a resident in Mt. Sinai's training program in internal medicine At that time, he was informed by Dr. Robert P. Ferguson, chief of medicine and director of the program, that this would be a three-year track position. In reliance on Ferguson's promise that the position would be for a three-year term, he turned down another job offer and began his employment with Mt. Sinai in October of 1983.
At the time the plaintiff commenced his employment, he was given a document entitled "Addendum to House Staff Contract for 1983-84 Residents", which set forth certain terms and conditions concerning the plaintiff's employment, including job security rights and a grievance procedure. The "Addendum", as modified by the promises made by Ferguson constituted a contract between the plaintiff and the defendant. According to that contract, the plaintiff was entitled to continue through the three year residency program unless he failed to successfully complete a particular year.
Mt. Sinai also provided its residents, including the plaintiff with a house staff manual. The manual included a section entitled "Policies for Evaluation of Resident Physician Performance", and CT Page 1920 according to those policies, the evaluation process is designed to be constructive, and to aid in the training process. The manual also states that the residency program adheres to the guidelines of clinical competence established by the American Board of Internal Medicine which state that clinical difficulties are to be detected as early as possible, and that residents with deficiencies are to be given additional training to improve their clinical competence.
On May 4, 1984, Ferguson told the plaintiff that he would be rehired as a second year resident if the plaintiff performed in a reliable and conscientious manner during the next two or three months. During the following three month period the plaintiff performed his duties and fulfilled his responsibilities in a reliable and conscientious manner. Nevertheless, on August 6, 1984, Ferguson told the plaintiff that his employment would be terminated as of December 31, 1984, and that the plaintiff would not be permitted to continue on to the second year of the residency program.
Based on the promises made by Ferguson and the representations contained in the "Addendum" and the house staff manual, the plaintiff reasonably believed that he would continue to be a resident for the full three year period so long as his performance was satisfactory, and that he would be given additional training and an opportunity to improve if his performance was unsatisfactory The plaintiff performed in a satisfactory manner throughout his employment. At no time during his employment with Mt. Sinai was he ever given any additional training in order to overcome any alleged deficiencies, despite his repeated efforts to obtain such training.
Count two is a contractual claim alleging that the defendant breached its contractual duty of good faith and fair dealing by failing to provide the plaintiff with additional training and an opportunity to improve before terminating his employment. Count three alleges that the defendant thereby tortiously breached its duty of good faith and fair dealing.
Count four alleges that the defendant breached its duty of good faith and fair dealing by failing to base its decision on an honest evaluation of his job performance. Count five contains the same allegations but claims that the defendant's duty was tortiously breached.
Count six is a promissory estoppel count which alleges that the plaintiff relied to his detriment on Ferguson's promises in accepting employment with the defendant. Count seven alleges that the defendant intended the plaintiff to detrimentally rely on the defendant's promises with respect to the plaintiff's employment. CT Page 1921
Counts eight and nine allege that the defendant breached its contractual duty of good faith and fair dealing by failing to apply the defendant's contractual grievance procedures in an honest and good faith manner. Count eight is brought as a contract claim and count nine is brought as a tort claim.
The principal ground of the defendant's motion in that it challenges the legal sufficiency of all nine counts of the complaint, is (as stated in its brief) that "[a]lthough the plaintiff has framed all counts of the complaint as if he were an employee, it is clear that the Court's standard of review of a hospital's decision to terminate a resident from a residency training program is very different from its review of an employer's termination of an employee." The authority relied upon by the defendant for this proposition is an unpublished United States District Court decision in which the court stated that "[j]udicial deference to the academic judgments of educational institutions is especially appropriate in the case of medical student or resident evaluations", and concluded under the facts of that case as found by the court after a hearing on the merits, that "[t]he stated reasons for denying Bliss a certificate of completion . . . are by no means arbitrary, capricious or unrelated to a reasonable evaluation of the performance of a physician training to be a surgeon." Bliss v. New Britain General Hospital, Civil No. #82-1117, slip op. at 19, 22 (D.Conn. Sept. 17, 1987) (digested in 13 CLT 48, p. 22, Dec. 7, 1987).
An intern or resident is an employee of the hospital for which he works for purposes of workers' compensation, because, unlike a physician who has completed the clinical training required for his specialty, he "has placed his time and service at the call of a superior", and the respective rights and obligations of the hospital and the intern are "to be determined by the contract, express or implied," between them. Bernstein v. Beth Israel Hospital,140 N.E. 694 (N.Y. 1923). Justice Cardozo, who wrote the opinion for the New York Court of Appeals described the duties of a resident or "junior house physician" as follows:
 [He] was under a duty to spend his days and nights at the hospital, and to render any service, administrative or medical, exacted by the hospital through its administrative agents, within the range prescribed by propriety and custom. He was a servant or employee by every test of permanence of duty, of intimacy of contact, and of fullness of subjection.
Id. at 695.
In the medical malpractice context, residents are considered CT Page 1922 hospital employees for purposes of liability under a respondeat superior theory. 40 Am.Jur.2d, Hospitals and Asylums, Sec. 28. For purposes of income taxation, the stipend of a resident or fellow is taxable because his instruction and training are under the complete control of the hospital and "[i]t is difficult to imagine a more perfect example of an employer-employee relationship. " Woodall v. Commissioner, 321 F.2d 721, 724 (10th Cir. 1963).
In most jurisdictions, "housestaff", which is the modern shorthand term used to describe medical interns, residents and clinical fellows, are deemed to be employees within the meaning of state collective bargaining statutes, because they are involved in direct patient care and most of the indicia of student status are lacking, such as the payment of tuition, the taking of examinations and the receiving of grades, and the awarding of degrees. Regents of the University of California v. P.E.R.B., 715 P.2d 590,599-603 (Cal. 1986). Although medical residency programs in teaching hospitals are an important part of post-graduate professional education, housestaff have been given collective bargaining rights under state labor relation laws because the courts have held that the educational program is supplementary to the primary purpose of the hospital which is the care and management of patients. Id. 603.
The claim made by the defendant in this case, namely, that the relationship that a hospital has with its medical residents is as a matter of law, not subject to the standards of judicial review ordinarily applied in the employment context, because the resident is a "student" and the hospital is his "school", was made by the defendants and rejected by the federal district court in Banerjee v. Roberts, 641 F. Sup. 1093 (D.Conn. 1986). In that case, the court (Cabranes, J.) held that an "individualized analysis" must be made of the alleged contractual relationship between the plaintiff resident and the University of Connecticut, which sponsored and administered the residency program because he appeared to have been "in some respects a student of the university but in other respects an employee." Id. at 1106.
The position of a resident, even in a residency program which is conducted by a state university, is a "hybrid, bearing some of the attributes of a student and some of an employee [and whether] the resident is considered an employee or a student depends on the context in which the question (and a cause of action) arises." Ross v. University of Minnesota, 439 N.W.2d 28 at 32 (Minn.Ct.App. 1989). A medical resident in a teaching hospital is both a graduate student doctor and an employee and any determination of the nature of their legal relationship requires further factual inquiry and analysis beyond legal labels and must be decided "on a case by case or totality of the circumstances basis." Easaw v. CT Page 1923 St. Barnabas Hospital, 537 N.Y.S.2d 944, 949 (Sup.Ct. 1989).
The defendant argues in the alternative that even though the plaintiff may have been "employed" by the hospital, its decision to terminate him from the residency program was based on his inability to meet the academic standards required of him as a postgraduate student rather than as an employee. As Judge Cabranes stated in Bliss (at 19), in reviewing such dismissals "[c]ourts should not interfere with academic valuations of this sort unless there has been arbitrary or capricious conduct, a manifest abuse of discretion, or bad faith exhibited by those evaluating a student's progress."
Although the plaintiff has alleged in paragraph 22 of each count of his complaint that the defendant "[i]n terminating the plaintiff's contract . . . acted maliciously and in bad faith, and with reckless indifference to plaintiff's rights", the defendant asserts in its brief (p. 13) that "conclusions of law, absent sufficient alleged facts to support them, are subject to a motion to strike." He relies on the general rule that where legal conclusions are pleaded they are not facts which are admitted on a motion testing the legal sufficiency of the complaint, and they will be disregarded unless other facts which are alleged therein support such a conclusion. Perkins v. Coffin, 84 Conn. 275, 280.
Where a party alleges that the other has acted unreasonably in bad faith he is entitled to establish the facts supporting that claim if he can, and he must be given the opportunity at trial of "making all reasonable claims of law upon the facts proven." State v. McCook, 109 Conn. 621, 640. Moreover, to the extent that a plaintiff alleges that his dismissal from a professional educational program was for reasons other than the quality of his academic work, or that it was motivated by bad faith, he has state a cause of action. Connelly v. University of Vermont, 244 F. Sup. 156,161 (D.Vt. 1965).
The complaint (para. 15) alleges that the plaintiff was told by Dr. Ferguson that he would be advanced to the second year of the program if he "performed in a reliable and conscientious manner" for the next three months, that he performed in that manner during that period (para. 16) and (para. 20) that the plaintiff "performed in a satisfactory manner throughout his employment." He has also alleged that his termination from the program was done maliciously and in bad faith, and with reckless indifference to his rights.
"When judges are asked to review the substance of a genuinely academic decision . . . they should show great respect for the faculty's professional judgment." Regents of University of Michigan v. Ewing, 474 U.S. 214, 255 (1985) (emphasis added). The United States Supreme Court has recently reiterated the importance CT Page 1924 of "avoiding second-guessing" of academic judgments and emphasized the fact that it was not retreating "from this principle of respect for legitimate academic decision-making." University of Pennsylvania v. E.E.O.C., 110 S.Ct. 577, 587 (1990).
Even if it were to be assumed that the defendant hospital, in administering its medical residency program, is an "educational institution" to which the more liberal standard for the judicial review of academic judgments should be applied, and that its supervising medical staff physicians are its "faculty" whose professional judgments are entitled to special judicial deference, the court nevertheless concludes that each count of the complaint states a cause of action because it alleges that the decision to terminate the plaintiff was neither a "genuine" or "legitimate" academic decision by the defendant hospital in the exercise of its "academic" functions and responsibilities.
For the foregoing reasons, the motion to strike the complaint in its entirety on the ground that it seeks judicial review of a bona fide and exclusively "academic" determination by the defendant, is denied.
The third and last ground stated in the defendant's motion to strike is that counts three, five and nine should be stricken "because the breach of the covenent of good faith is a contractual claim, not a tort claim, in the employment contract context."
Our supreme court has held that the implied covenant of good faith and fair dealing is a rule of construction "designed to fulfill the reasonable expectations of the contracting parties as they presumably intended" but that it cannot be applied to achieve a result contrary to the clearly expressed terms of the contract. Magnan v. Anaconda Industries, Inc., 193 Conn. 558 at 567. Although the Magnan court did not indicate whether, or under what circumstances, tort damages could be recovered for such a breach, the California supreme court has noted that the Connecticut courts "have impliedly denied tort damages by limiting recovery for breach of the implied covenant to benefits earned under the contract." Foley v. Interactive Data Corp., 765 P.2d 373, 391-92, n. 26 (Cal. 1988) (citing Magnan and Cook v. Aleander Alexander,40 Conn. Sup. 246).
Although tort recovery for breach of the implied covenant of good faith and fair dealing is well established in actions brought on insurance contracts because of the "special relationship" between insurer and insured, most courts have been reluctant to extend the tort action beyond the insurance setting. Wagenseller v. Scottsdale Memorial Hospital, 710 P.2d 1025, 1040 (Ariz. 1985). Their unwillingness to do so is based on the fundamental differences between insurance and employment relationships, the traditional CT Page 1925 separation of tort and contract law, and the variety of legal theories available to employees to protect them against improper terminations of their employment. Foley, 765 P.2d at 396.
Tort damages should not ordinarily be recoverable for the breach of an implied covenant of good faith and fair dealing found in an employment contract because "[o]ur courts have provided an adequate remedy for employer conduct that violates public policy [and we] are unpersuaded that there is a need to depart from the ordinary rules of contract law applied in other cases." Noye v. Hoffmann-LaRoche, Inc., 570 A.2d 12 at 15 (N.J. App. 1990). Our supreme court has at least implicitly subscribed to this view by recognizing an independent cause of action in tort arising from a breach of the covenant of good faith in an employment context only where the defendant was both the insurer and employer of the plaintiff. Buckman v. People Express, Inc.,205 Conn. 166, 171 (emphasis added).
For the foregoing reasons, the defendant's motion to strike counts three, five and nine of the complaint are granted.
It should be noted that although the defendant has made other claims directed to the legal sufficiency of the individual counts of the complaint in its brief, those claims have not been separately set forth in its motion as required under 154 of the Practice Book. King v. Board of Education, 195 Conn. 90, 94 n. 4. Apart from this procedural deficiency, the court finds that to the extent that they are based on evidentiary, rather than legal, arguments they need not be considered on a motion to strike in any event, and insofar as they may properly be grounds for a motion to strike they are without merit based on the cases cited in the plaintiff's brief.
Hammer, J.