[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
This action, brought under various contract and tort law theories, arises out of an alleged breach of an employment contract. The defendants, Bushnell Towers Condominium Association, Inc., Bushnell Plaza Condominium Association, Inc., Thibodeau Management Services, Inc., and John R. Biskupski, on August 6, 1992, filed a Motion to Strike the Third, Sixth, Ninth, Twelfth and Thirteenth Counts of the plaintiffs' Revised Complaint dated July 24, 1992, pursuant to Conn. Practice Book, Section 151, et seq., for their failure to state a claim for which relief can be granted.
In their Objection to Motion to Strike dated September 16, 1992, the plaintiffs did not contest the defendants' Motion to Strike Counts Sixth, Ninth and Thirteenth, and those three counts are therefore stricken, leaving the Motion to Strike the Third and Twelfth Counts for determination.
The Motion to Strike alleges that the Third and Twelfth Counts, which sound in loss of consortium, should be stricken because "a cause of action sounding in loss of consortium is not cognizable absent an allegation of physical in jury."
A motion to strike is the correct way to challenge the legal sufficiency of a cause of action. Conn. Practice Book, Section 152. All properly pleaded facts must be construed in the light most favorable to the plaintiffs. Morris v. Hartford Courant Co., 200 Conn. 676, 678 (1986). In making its determination, the court may not go beyond the pleadings, and is therefore limited to the facts which have been alleged in the pleadings. King v. Board of Education, 195 Conn. 90, 93 (1985).
I. FACTS: PLEADED CT Page 9504
From June 15, 1987 until October 9, 1991, the plaintiff, Swavek Krosky, was employed by the defendant-condo-corporations, whose operations manager was the defendant, John Biskupski. On October 9, 1991, the defendant, John Biskupski, wrongfully and in violation of Public Policy, terminated the plaintiff's employment with the defendant-condo-corporations. The defendant, John Biskupski, intentionally inflicted emotional distress on the plaintiff, or knew or should have known that his conduct would result in emotional distress to the plaintiff.
As a result of this termination, the plaintiff sustained a loss of wages and fringe benefits; emotional and psychological pain and suffering, both past and future; damage to his career and reputation, humiliation and loss of self-esteem, and has and will continue to suffer from the lack of ability to pursue and enjoy life's pleasures and activities.
At all times mentioned in the Revised Complaint, the plaintiff, Yvonne Krosky, was the wife of the plaintiff, Swavek Krosky.
II. DISCUSSION
In the Third Count, the plaintiff, Yvonne Krosky, alleges that as a result of the breach of the implied covenant of good faith and fair dealing owed by the defendant-condo-corporations to her husband, she has been denied the care, protection, consideration, consort, companionship, aid and society of her husband, the plaintiff, Swavek Krosky.
In the Twelfth Count, the plaintiff, Yvonne Krosky, alleges that as a result of the infliction of emotional distress on her husband by the defendant, John Biskupski, she has been denied the care, protection, considerations, consort, companionship, aid and society of her husband, the plaintiff, Swarek Krosky.
A. Third Count — Loss of Consortium due to breach of implied covenant of good faith and fair dealing.
 The defendants claim that this count should be stricken for two reasons:
 1. Connecticut does not recognize a claim for loss of consortium unless there is an allegation of physical injury to the injured CT Page 9505 spouse, and there is no such claim in this case.
 2. Connecticut does not recognize a claim for loss of consortium unless the injured spouse's claims sound in negligence, whereas in this case they are contractual or quasi-contractual in nature.
a. In the case of Hopson v. St. Mary's Hospital, 176 Conn. 485,487 (1979), the Connecticut Supreme Court expressly overruled its previous decision (Marri v. Stamford street R. Co., 84 Conn. 9, (1911)) and held "that either spouse has a claim for loss of consortium shown to arise from a personal injury to the other spouse caused by the negligence of a third person . . . ." Hopson v. St. Mary's Hospital, 176 Conn. 585, 496 (1979).
The issue therefore is whether the injuries alleged by plaintiff husband, namely "emotional and psychological pain and suffering humiliation and loss of self-esteem," come within the definition of "personal injuries." Is the word `person' limited to arms, legs, back, eyes and those bodily parts which can be seen and touched; or does the word `person' extend to his or her mind, thought processes, feelings and emotional stability?
This court rejects the narrow interpretation of the term `personal injuries', and construes it to mean injury to any part of a person, including those parts which govern the wide range of psychological, mental and emotional activities that characterize human persons, and lend so much to their relationships with others. In short, an injury to one's emotional and mental well-being can certainly be just as much an injury to that `person' as a broken arm or leg.
If the injured spouse is unable to be his or her usual source of companionship, reliance, affection and sharing to the uninjured spouse, why should it make any difference if the cause of that diminished capacity is physical or emotional? One is just as real as the other, and the same level of proof will be required for both. To allow recovery for one and not for the other, would be to impose a strictly arbitrary distinction, one without basis in logic or policy.
b. As to the defendants' claim that there can be no cause CT Page 9506 of action for loss of consortium unless the injured spouse's cause of action sounds in negligence, the court must analyze the nature of the claim in this case, which is `Breach of Implied Covenant of Good Faith and Fair Dealing.'
The defendants claim that this is a contractual cause of action and therefore excluded by the Hopson case (supra) because Hopson requires that the injury to the injured spouse be caused by negligence.
Plaintiff husband's claim of a breach of implied covenant of good faith and fair dealings arises out of his claim of wrongful termination of his employment, which was a violation of Public Policy in various ways spelled out in Paragraphs 24 and 25 of the First Count of the Revised Complaint.
A claim for wrongful termination of employment is essentially a tort claim. In the case of Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471 (1980), the plaintiff alleged that he was discharged by his employer because of his conduct in calling to his employer's attention repeated violations of the Connecticut Uniform Food, Drug and Cosmetic Act, which prohibits the sale of mislabeled food. The court compared that case to cases from several other states in which recovery was sought for retaliatory discharge. The Connecticut court stated on Page 480:
 "In the light of these recent cases, which evidence a growing judicial receptivity to the recognition of a tort claim for wrongful discharge, the trial court was in error in granting the defendant's motion to strike."
Connecticut therefore considers a claim which is based on wrongful discharge in violation of Public Policy, to be a tort claim.
In a Superior Court decision in the case of Grand Sheet Metal Products Company v. Protection Mutual Insurance Company, et al, 34 Conn. Sup. 46 (1977) the court expressly adopted (page 51) the Greenberg rule, which was:
 "It is manifest that a common legal principal underlies all of the foregoing decisions; namely, that in every insurance contract there is an implied covenant of good faith and fair dealing. The duty to so act is immanent in the contract CT Page 9507 whether the company is attending to the claims of third persons against the insured or the claims of the insured itself. Accordingly, when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort. (Pages 47, 48).
Inasmuch as the Third Count alleges personal injuries arising out of what is, at its heart, a claim of tortious conduct, the Motion to Strike the Third Count is denied.
B. TWELFTH COUNT — Loss of consortium due to infliction of emotional distress.
The Twelfth Count is derivative of the Eleventh Count, which asserts a claim for unintentional infliction of emotional distress by the defendant, John Biskupski. The defendant makes the same claims in his Motion to Strike as were made in the Motion to Strike the Third Count, which are that the injured spouse must allege personal injuries, and that those claims must sound in negligence. This Court has already addressed the issue of personal injuries with reference to the Third Count, leaving only the issue of whether unintentional infliction of emotional distress is sufficiently a negligence or tort action so as to bring it within the embrace of the Hopson case, supra.
 "It is true that in certain limited circumstances compensable tort damages may arise from the breach of a duty which `may be the outgrowth of a contractual relationship between the parties.'" Urban v. Hartford Gas Co., 139 Conn. 301, 304, 93 A.2d 292. Paraphrasing what we said in that case (pp. 306, 307) the test would be whether the plaintiff intentionally and unreasonably subjected the defendants to emotional distress which he should have recognized as likely to result in illness or other bodily harm. If the plaintiff did not intend to cause emotional distress, he is liable in damages only if he should have realized that his conduct involved an unreasonable risk of causing the distress and from the facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm. See also, Restatement, 2 Torts 312, 313."
Bertozzi v. McCarthy, 164 Conn. 463, 469 (1973) (referring to the counterclaim of the defendants). CT Page 9508
In the Revised Complaint, the plaintiff husband has alleged sufficient acts (see First Count, incorporated into Twelfth Count), which, if proved, would establish what the Bertozzi case, supra, requires for a tort claim for the unintentional infliction of emotional distress.
Therefore the Twelfth Count alleges the sustaining of personal injuries resulting from what are essentially tortious acts, so the Motion to Strike the Twelfth Count is denied.
Walsh, J.