[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM ON MOTION TO STRIKE (NO. 113)
The plaintiff-lessors, Heyman Associates #1, a general partnership, and Samuel J. Heyman, filed a complaint on November 25, 1991, seeking to recover damages for, inter alia, the alleged breach of a lease agreement and the alleged mishandling of hazardous substances by the defendant-lessee United Technologies Corporation ("UTC"), a Delaware corporation with its principal place of business in East Hartford, Connecticut.
The following allegations are taken from the plaintiffs' nine count second revised complaint, filed on May 21, 1992. On February 26, 1969, an entity known as Manchester Properties, Inc., as lessor, entered into a seven-year lease agreement with UTC (then known as United Aircraft Corporation). The plaintiffs are successors to Manchester's interest in the property by virtue of conveyances made in 1976 and 1985. The parties subsequently exercised renewal options contained in the lease agreement, thereby extending the lease until August 31, 1988.
Under the terms of the parties' lease agreement, UTC had, inter alia, the following obligations:
 (a) "to do no waste" to the property (Section Sixth);
 (b) to take good care of the demised premises and make all ordinary repairs to the interiors. . . ." (Section Tenth);
 (c) to "comply with all state and federal statutes and municipal ordinances . . . which relate to the manner of the use of the premises . . . including . . . all laws of any governmental agency relating to the Environmental Protection Act. . . ." (Section CT Page 1780 Seventeenth); and
 (d) to "quit and surrender . . . the premises in good order and condition. . . ." (Section Twenty-first).
The plaintiffs allege that during its tenancy, UTC caused hazardous substances used during the normal course of its foundry operations to contaminate the property. The plaintiffs also allege that United's tenancy under the lease expired as of August 31, 1988, and that United has not paid rent since that date while continuing to occupy the property through the present time.
The plaintiffs' second revised complaint states separate causes of action alleging: breach of the lease agreement (First Count); holdover tenancy (Second Count); wrongful entry and possession (Third Count); nuisance (Fourth Count); "negligent nuisance" (Fifth Count); strict liability based on United's "abnormally dangerous activities" (Sixth Count); violation of the Connecticut Transfer Act, General Statutes 22a-134 et seq. (Seventh Count), violation of the Connecticut "Superfund" Statute, General Statutes 22a-452 (Eighth Count); and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), General Statutes 42-110a et seq., (Ninth Count).
On June 3, 1992, UTC filed a motion to strike the sixth, seventh and ninth counts of the plaintiffs' second revised complaint, along with a supporting memorandum of law. The plaintiffs filed an objection on August 28, 1992, along with a memorandum of law in opposition.
A motion to strike challenges the legal sufficiency of the allegations of a complaint, or any one or more counts thereof, to state a claim upon which relief can be granted. Practice Book 152(1); Ferryman v. Groton, 212 Conn. 138, 142,561 A.2d 432 (1989). A motion to strike admits all well-pled facts; Mingachos v. CBS, Inc., 195 Conn. 91, 108, 491 A.2d 368 (1985); which are then construed in the light most favorable to the pleader. Blancato v. Feldspar, 203 Conn. 34, 36, 522 A.2d 1235
(1987). In determining whether the motion should be granted, the question is whether, if the facts alleged are taken to be true, the allegations provide a cause of action or a defense. King v. Board of Education, 195 Conn. 90, 93, 486 A.2d 1111
(1985). "If facts provable in the complaint would support a CT Page 1781 cause of action, the motion to strike must be denied." Westport Bank Trust Co. v. Corcoran, Mallin Aresco, 221 Conn. 490,496. 605 A.2d 826 (1992).
In support of its motion to strike the plaintiffs' second revised complaint, UTC argues that the sixth count is legally insufficient because strict liability is not applicable to UTC's conduct on the property in question. UTC argues that the plaintiffs' seventh count is legally insufficient because General Statutes 22a-134 (the "Transfer Act") does not apply to reversions of property from a tenant to the landlord. UTC contends that the plaintiffs' ninth count is legally insufficient because the leasing of property by an entity not in the business of leasing property (i.e., a business such as UTC), is outside the scope of General Statutes 42-110a et seq. ("CUTPA").
In response, the plaintiffs argue that the seventh count states a legally cognizable claim under the Transfer Act because reversion of the property under the lease agreement constitutes a transfer within the scope of the act. The plaintiffs further contend that the ninth count states a legally sufficient claim under CUTPA. The plaintiffs make no objection to the motion insofar as it seeks to strike their sixth count, which sounds in strict liability, accordingly the sixth count is stricken.
Seventh Count: Connecticut Transfer Act
In support of its motion to strike the seventh count, UTC argues that General Statutes 22a-134 et seq., ("the Transfer Act") applies only to transfers which involve a change of ownership or a "transfer of operations." UTC argues that because the plaintiffs' claim is based on the reversion of leased property, the plaintiffs have failed to state a legally sufficient claim under the Transfer Act. In response, the plaintiffs argue that 22a-134 et seq., applies to "the conveyance of real property" and a lease constitutes a transfer of an estate in land which falls within the scope of the Transfer Act.
General Statutes 22a-134 provides in pertinent part that:
 For the purposes of this section and sections 22a-134a to 22a-134d, inclusive: CT Page 1782
 (1) "Transfer of establishment means the transfer of any operations which involve the generation, recycling, reclamation, reuse, transportation, treatment, storage, handling or disposal of hazardous waste, or any other transaction or proceeding through which an establishment undergoes a change in ownership, including, but not limited to, sale of stock in the form of a statutory merger or consolidation, sale of the controlling share of the assets, the conveyance of real property, change of corporate identity or financial reorganization, but excluding corporate reorganization not substantially affecting the ownership of the establishment; (Emphasis added.)
As stated by Senator Benson, the sponsor of the Transfer Act:
 This bill now will protect individuals who are planning to purchase a piece of property that has been used for hazardous waste treatment or storage. What it does is provide in the transfer, a requirement that if you were to be selling a piece of property you are to provide to the buyer, a negative declaration.
28 S. Proc., 1985 Sess. Pt. 6, at 1801-02 (May 1, 1985).
Based on the legislative history and the plan language of the statute, 22a-134(1) applies to an establishment which "undergoes a change of ownership. " The term "conveyance of real property" must be narrowly construed, as it refers to conveyances which effect a change of ownership, such as the sale of property. Thus, 22a-134(1) does not apply to a reversion of a lease, and therefore, the plaintiffs have failed to state a legally sufficient claim under the Connecticut Transfer Act. Accordingly UTC's motion to strike the plaintiffs' seventh count is granted.
Ninth Count: CUTPA
In support of its motion to strike the plaintiffs' ninth count, UTC argues that General Statutes 42-110a et seq. ("CUTPA") does not apply to lessees that are not in the "trade CT Page 1783 or business" of being lessees. Thus, UTC argues that a lessor does not possess a cognizable CUTPA claim where the lessor's claim is based upon the lessee's status as a lessee.
In response, the plaintiffs argue that their complaint alleges facts which relate to UTC's violation of state and federal environmental laws (and cover-up thereof) by UTC in the conduct of its airplane engine manufacturing business. The plaintiffs contend that under UTC's interpretation of CUPTA, UTC would be immune from suit under CUTPA for any deception or unfair practices inflicted upon any entity other than the ultimate purchaser of its product.
General Statutes 42-110b(a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts in the conduct of any trade or commerce." (Emphasis added.)
Section 42-110a(4) provides that:
 "Trade" and "commerce" means the advertising, the sale or rent or lease, the offering or sale or rent or lease, or the distribution of any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state. (Emphasis added.)
 In determining whether a practice violates CUTPA, we use the following criteria: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers[,] competitors or other businessmen."
Daddona v. Liberty Mobile Home Sales, Inc., 209 Conn. 243, 254,550 A.2d 1061 (1988). CT Page 1784
The ninth count of the plaintiffs' second revised complaint contains the following allegations: (1) that UTC was engaged in "trade or commerce" in connection with its activities as lessee of the plaintiffs' property; (2) that UTC contaminated the property with hazardous waste' (3) that UTC engaged in deceptive practices by concealing the nature and extent of the contamination; and (4) that UTC's acts offended public policy and caused substantial injury to the plaintiffs.
The language of 42-110a(4) may be broad enough to permit a plaintiff-lessee to assert a CUTPA claim against a defendant-lessor who committed an unlawful or deceptive act in conjunction with the leasing of property to the plaintiff, where the defendant is in the "trade" or business or leasing (or selling or renting) real property. Likewise, in order for a plaintiff-lessor to assert a CUTPA claim against a defendant-lessee, the defendant must be in the "trade" or business of being a lessee.
In the present case, UTC is not in the "trade" or business of being a lessee, and therefore, its alleged unlawful and deceptive acts were not done "in the conduct of its trade or commerce" as required by General Statutes 42-110b(a). Accordingly that plaintiffs have failed to allege a legally sufficient CUTPA claim, and UTC's motion to strike the ninth count of the plaintiffs' second revised complaint is granted.
STODOLINK, J. CT Page 1785