[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
I. PROCEDURAL BACKGROUND
The plaintiff as pro se initiated the instant action by writ, summons, and complaint, dated February 16, 1994, against the corporate defendant, United Technologies Corporation (hereinafter "UTC"), and eight individual defendants. Said complaint alleged multiple counts against all defendants based on the plaintiff's termination as an employee from UTC in January of 1994.
Since the filing of the original complaint, the court has heard and decided a number of motions, including two Requests to Revise submitted by the defendants and one Motion to Strike submitted by the individual defendants only. Subsequent to the court's decisions on these various motions, the plaintiff has filed a number of revised complaints, the most recent of which is Revised Complaint F.
On April 12, 1995, subsequent to the plaintiff's filing of Revised Complaint F, the corporate defendant UTC filed its Motion to Strike eleven of the counts alleged against the corporation itself. A Memorandum of Law in support of the Motion to Strike was appended to the motion. On April 25, 1995, the plaintiff filed a Memorandum in Opposition to the Motion to Strike.
The court heard oral argument on the motion on June 1, 1995. The defendant UTC's motion requesting that various counts be stricken is broken down into seven specific categories: wrongful discharge in violation of public policy, counts 33, 35, and 36; a violation of § 31-51q of the Connecticut General Statutes, count 34; breach of contract, count 37, 38, and 39; unjust enrichment, count 42; negligent misrepresentation, count 44; a violation of § 31-71e of the Connecticut General Statutes, count 45; and an untitled count with a caption reading CT Page 6979 "breach of duty with proximately caused damages", count 46. Both parties have set up their respective memorandum of law in this same fashion. Accordingly, this court will structure its decision in this same order.
II. LAW
A motion to strike tests the legal sufficiency of a pleading. Novametrix Medical Systems, Inc. v. BOC Group, Inc.,224 Conn. 210, 214-15 (1992). The court is limited to the facts in the complaint, which are construed most favorably to the plaintiff. Id., 215. The motion does not admit legal conclusions or opinions stated in the complaint. Mingachos v.CBS, Inc., 196 Conn. 91, 108 (1985). (See also § 152 of the Connecticut Practice Book as amended.) A pleading that "on its face is legally insufficient" is subject to a motion to strike, even though facts may exist which, if properly pleaded, would establish a cause of action upon which relief could be granted.Baskin's Appeal from Probate, 194 Conn. 623, 640 (1984).
III. DISCUSSION
 A. Wrongful Discharge in Violation of Public Policy (Counts 33, 35, and 36)
UTC moves to strike counts 33, 35, and 36 of the plaintiff's complaint claiming that the plaintiff has not stated a cause of action for wrongful discharge in violation of public policy. In count 33 the plaintiff alleges that the violation of public policy is "favoring compliance with major defense contractor code of ethics and programs therein run by ombudsman". In counts 35 and 36 the plaintiff alleges that the violation of public policy is "due process of law where implied by contract" or "notice of misconduct meriting dismissal"
Defendant argues that the plaintiff is an employee at will; for an exception to termination at will, there must be a recognized public policy exception. Such exceptions, defendant claims, apply only to terminations that violate specific statutory or constitutional provisions. Defendant UTC further argues that no such exception has been pled by the plaintiff in any of these three counts.
Plaintiff argues that in these three counts he alleges UTC's violation of a host of recognized public policies, CT Page 6980 including a major defense contractor's Code of Ethics, due process of law where implied by contract, and notice of misconduct meriting dismissal. Specifically, defendant cites a United States presidential executive order, the Code of Federal Regulations pertaining to defense contractors, and the Sentence Reform Act of 1988, as it pertains to corporate development to develop internal programs to prevent and detect internal misconduct. In sum, it appears that plaintiff alleges that he was encouraged to participate in an open forum in the workplace, did so, and was terminated for that participation. Based on the above-cited policies, plaintiff contends this is a violation of public policy and therefore, an exception to the employment-at-will doctrine.
Plaintiff cites two New Jersey cases to support his position. Plaintiff cites no Connecticut cases which recognize any of the above-cited policies as exceptions, and during oral argument, admitted that he was not aware of any such case in Connecticut.
Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471
(1980) has long set the standard in Connecticut for what will and what will not constitute a recognized public policy exception to the employment-at-will doctrine. That standard is an extremely narrow one. As stated in Sheets, "The issue then becomes the familiar common-law problem of deciding where and how to draw the line between claims that genuinely involve the mandates of public policy and are actionable, and ordinary disputes between employee and employer that are not." Id. at 477. This line is drawn narrowly and "supported by mandates of public policy derived directly from the applicable state statutes and constitutions" Id. at 476. Admittedly, "[g]iven the inherent vagueness of the concept of public policy, it is often difficult to define precisely the contours of the exception."Morris v. Hartford Courant Co., 200 Conn. 676, 689 (1986). Still, it is necessary for the plaintiff to allege that the discharge violated a specific statutory or constitutional provision or contravened a judicially conceived notion of public policy. Id.
In counts 33, 35 and 36, this court is not persuaded that the plaintiff alleged a recognized exception based either in statute, the constitution, or judicial opinion. Codes of ethics, due process of law where implied by contract, and notice of misconduct meriting dismissal even if allegedly CT Page 6981 premised on presidential orders, the Code of Federal Regulations, or the Sentence Reform Act do not rise to the level of a recognized public policy exception. This court does not intend to expand Connecticut's recognized public policy exceptions. Accordingly, defendant UTC's Motion to Strike counts 33, 35, and 36 is granted.
 B. Violation of Section 31-51q C.G.S. Count 34
Defendant UTC moves to strike count 34 of plaintiff's Revised Complaint F which alleges "wrongful discharge by violation of C.G.S 31-51q". The plaintiff alleges in this count that his participation in two in-house programs, "Straight Talk" and "DIALOG", caused his discharge and as such, was a violation of the statute.
Section 31-51q of the Connecticut General Statutes states in part: "Any employer who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment of the United States Constitution or Section 3, 4 or 14 of article first of the constitution of the state shall be liable to such employee for damages caused by such discipline or discharge."
Defendant UTC argues that in order to constitute such a statutory violation, such speech must not address an individual's own personal concerns, but must pertain to a matter of public concern and in the alternative argues that the statute does not apply to speech occurring on private property in the context of the employment relationship. Because this court agrees with the defendant UTC that the plaintiff's speech does not pertain to a matter of public concern, it is unnecessary to address whether or not the statute applies when the speech occurs on private property.
In accord with Schnabel v. Tyler, 230 Conn. 735, 751, UTC argues that "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a court is not the appropriate forum in which to review the wisdom of a personnel decision . . . in reaction to the employee's behavior." CT Page 6982
Plaintiff contends count 34 is legally sufficient; he has alleged a violation of the statute and alleged that his speech did not interrupt the workplace. He further argues that if this court does not find that argument persuasive, his alternative argument is that his speech was protected by the federal and state constitutions. Plaintiff then claims that his position is confirmed by two superior court decisions: Olsonv. Accessory Controls Equipment Corp, 1994 Conn. Super. 398 (Corradino, J. 2/15/94) and Bakelman v. Paramount Card, Inc.,9 CSCR 766 (Lavine, J. 7/245/94), both of which follow Andersonv. E J Gallo Winery, 861 F.2d 1389 (1985).
In Olson, the court (Corradino, J.) found that in adopting § 31-51q, the "legislature did intend to create a cause of action against employers for infringement of employee speech." The court went on to state "[i]f speech activity occurs on the employer's premises, it is more likely that [a defense] would arise. But that has nothing to do with whether Section 31-51q provides a cause of action in the first place to an employee and is not raised by the motion to strike." InBakelman, the court (Lavine, J.) found that this statutory section applied to any employer, private and/or public. (Neither party seems to contest this interpretation.) The court also found that the conduct alleged must be a "matter of public concern" See Connick v. Myers, 461 U.S. 138, 146-148 (1982). The Bakelman court suggests a broad inquiry: "whether the plaintiff, in acting as he or she did, was acting as a citizen pursuing a public issue, or acting instead as a private employee pursuing private interests." Id.
Adopting the Bakelman analysis, a case on which the plaintiff himself relies in this instant matter, this court finds that the plaintiff has not alleged that he was acting as a citizen pursuing a matter of public concern. In fact, introductory paragraphs contained in plaintiff's complaint and referred to in this specific count (Paragraph B2.1) involve plaintiff's protest about one of UTC's product lines and protest about bonuses to certain UTC executives.
In order for the plaintiff "to show that constitutionally protected rights are at issue, [he] must allege that in engaging in the speech at issue the plaintiff was exercising his or her rights as a citizen with respect to a `matter of public concern'" Bakelman, supra. "Whether an employee's speech touches on a matter of public concern must be determined CT Page 6983 by the content, form, and context of a given statement." Vincev. Worrell, Superior Court, Judicial District of Hartford/New Britain at Hartford, Docket No. CV 86-031986 (July 14, 1992, Schaller, J.). See also Schnabel, supra. "The issue to be addressed is not simply whether the subject matter of the employee's complaints touches on a matter of public concern generally; the issue is whether acting as he did, an employee was acting as a citizen attempting to speak out on a public issue, or whether the employee was instead attempting to resolve a private dilemma relating to employment." Bakelman, supra.
In the present case, the allegations do not support a finding that the plaintiff was acting as a citizen pursuing a public issue. Rather, the allegations indicate that the plaintiff was expressing his disapproval of management decisions within the company. He was specifically concerned with the effect of the management's policy decisions on his own department within the company. The fact that the employer sponsored "Straight Talk" and "DIALOG" does not affect the determination of whether the speech was a matter of public concern. Additionally, the plaintiff's allegation that he was speaking as a citizen pursuing a public issue on behalf of himself, other employees, the company, the corporation, the government and the community is not supported by the factors as alleged. The court does not have to accept the plaintiff's legal conclusions or opinions. Mingachos v. CBS, Inc., supra at 108. The allegations, viewed with reference to the content, form, and context of the plaintiff's statement, describe nothing more than an employee expressing his dissatisfaction with internal management decisions.
The plaintiff concedes that he "realized that because of a general business decline that cost cutting measures would have to be implemented, to include layoffs and other appropriate cost reduction activity." (Plaintiff's Complaint, paragraph B1) The allegations show that the plaintiff did not like the cost cutting measures chosen by the defendant because he believed they would adversely affect his department, and presumably his job. Because the plaintiff's speech doe [does] not pertain to a matter of public concern in violation of General Statutes § 31-51q, the defendant's Motion to Strike count 34 is granted.
C. Breach of Contract CT Page 6984
Counts 37, 38, and 39
In counts 37, 38 and 39, plaintiff alleges a breach of implied contract based on the corporate defendant's promotion policies, the corporate defendant's termination and layoff policies, and the unreasonable conduct of one of UTC's employees. UTC moves to strike all three of these counts, arguing that they do not represent legitimate and recognized causes of action. The defendant UTC further argues that the policies of UTC do not constitute the basis for a contract under Connecticut law.
This court agrees with defendant's statement of the law: "A contract implied in fact, like an express contract, depends on actual agreement" D'Ulisse-Cupo v. Board ofDirectors of Notre Dame High School, 202 Conn. 206, 211-212 (1987). See also Coelho v. Posi-Seal Int'l., Inc., 208 Conn. 106, 112
(1988).
The court disagrees, however, that what the plaintiff cites in paragraph 2.2 of this Revised Complaint F (including eleven separate written policies) is a "ridiculous laundry list". As plaintiff argues and as our courts have recognized, in the absence of a definite contract, the determination of the existence of a contract and/or the scope of its terms are questions of fact reserved for the trier of fact based on all of the evidence. Finley v. Aetna, 5 Conn. App. 394, 404, affirmed, 202 Conn. 190, 199 (1987).
Accordingly, since such a determination is reserved for the trier of fact, a motion to strike these counts can not be granted. Defendant UTC's motion to strike counts 37, 38, and 39 is denied.
 D. Unjust Enrichment Count 42
UTC moves the court to strike count 42 of the plaintiff's Revised Complaint F, unjust enrichment. Defendant argues that the plaintiff has not alleged any contractual relationship with UTC and consequently, this cause of action must fail. The defendant further argues that this count replicates a prior count of unjust enrichment as to the individual defendants which this court struck in its November, 1994 decision. To be consistent defendant claims the court must also strike CT Page 6985 this count as to the corporate defendant. Defendant states that the court can rely on prior pleadings in the case to establish what it is that the plaintiff is claiming he sacrificed. In this revised edition of plaintiff's complaint, he makes general allegations about "compensation and labor sacrifices" Defendant claims that plaintiff is referring to furlough days, and this court previously ruled on furlough days: "Plaintiff was not required to work on furlough days [c]onsequently, he was not owed any money for unpaid time worked." (Memorandum of Decision on Motion to Strike, October 18, 1994.)
Defendant cites Markiewicz v. Bajor, 1990 WL 265274 (Conn.Super.) (Fuller, J. Dec. 7, 1990) to support its position about the court's ability to rely on prior pleadings. The court disagrees with defendant UTC's interpretation of this case. In Markiewicz the defendant attached a number of exhibits, including prior pleadings, to his motion to strike. The court specifically stated that such an approach was "not allowed with a motion to strike". This court is, therefore, bound by what plaintiff has pied in this revision.
As previously stated, in this revision, the plaintiff does not allege "furlough days" but in lieu thereof alleges "compensation and labor sacrifices" This court's analysis must be limited to what plaintiff has pied in this revision.King v. Board of Education, 195 Conn. 90, 93 (1985). Plaintiff once again relies on Burns v. Koellmer, 11 Conn. App. 375
(1987) and Bolmer v. Kocet, 6 Conn. App. 595 (1985) in support of his argument that he has sufficiently alleged a cause of action for unjust enrichment. (See Court's previous analysis in its Memorandum of Decision, Motion to Strike, October 18, 1994.) As stated in this court's prior decision on the individual defendants' motion to strike, "Unjust enrichment applies when justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract." Cecio Bros., Inc. v. Greenwich,156 Conn. 561, 564 (1968). Whether or not plaintiff has a contract with UTC remains to be proven, but this court did not strike counts 37 through 39 which deal with plaintiff's breach of contract claims. Consequently, if the trier of fact determines that the plaintiff and UTC had a contract, then the trier of fact could next ascertain whether UTC was unjustly enriched by the "compensation and labor sacrifices" which plaintiff claims he was forced to make. As now alleged by the plaintiff, CT Page 6986 this claim as to the corporate defendant UTC is one of fact to be determined by the trier of fact. Accordingly, defendant UTC's Motion to Strike Count 42 is denied.
E. Negligent Misrepresentation
Count 44
Defendant next moves to strike count 44 of plaintiff's revision which claims that UTC negligently misrepresented information to him. Specifically, plaintiff alleges that he received false information relating to executive bonuses and compensation and other labor sacrifices of all Hamilton Standard employees. Defendant claims that plaintiff has not sufficiently alleged the elements necessary to sustain a negligent misrepresentation cause of action.
As accurately cited by defendant UTC, to sustain this cause of action, plaintiff must allege that: 1.) UTC negligently supplied him with false information, and 2.) he relied on it to his detriment. D'Ulisse-Cupo, supra at 218. In paragraph 44.2 plaintiff claims that UTC management made "false representations to plaintiff" In paragraph 44.3 plaintiff claims that these representations "induce[d] [him] to continue his employment and voluntarily comply with policies requiring compensation and labor sacrifices." In paragraph 44.5 plaintiff claims that he was damaged by these representations.
Based on the allegations cited by plaintiff in paragraphs 44.2, 44.3, and 44.5, this court feels that plaintiff has adequately pied negligent misrepresentation. It should be noted that this court is not persuaded by plaintiff's argument that defendant did not move to strike the fraud counts; therefore, defendant should be foreclosed from moving to strike this count (arguing that the standard for fraud is higher than the standard for negligent misrepresentation). However, defendant's Motion to Strike count 44 is denied; as stated, plaintiff has sufficiently pied this cause of action.
F. Wrongful Wage Withholding (Section 31-71e C.G.S.)
Count 45
Plaintiff claims he had deductions made from his wages which constitute a violation of the statute. Defendant CT Page 6987 claims there can be no statutory violation since plaintiff's "deduction" was the furlough days. Defendant again argues that this court should look to prior pleadings (i.e. Revised Complaint D) to determine plaintiff's meaning of the word "deduction". As already determined by this court in Section IIID of this decision, supra at p. 13, this court will not look to prior allegations in prior revisions of the complaint.
"A superseded pleading remains in the case as a part of its history and is available to the adverse party as an admission." Nichols v. Nichols, 126 Conn. 614 (1940). The trial court may take judicial notice of any and all papers in the file. Id. However, "[j]udicial notice takes the place of proof." Id. at 621. Because a court cannot go outside of the complaint for the purposes of a motion to strike, it cannot look at the "proof" demonstrated by prior pleadings. See, e.g., Yale New Haven Hospital v. Orlins, 6 Conn. L. Rptr. 364
(May 12, 1992, Levin, J.).
In the present revised complaint, the plaintiff has alleged facts sufficient to support a claim for violation of General Statutes § 31-71e, the court is bound to regard those allegations as true for the purposes of this motion. Accordingly, the defendant's Motion to Strike count 45 is denied.
 G. Untitled (Breach of Duty with Proximately Caused Damages)
Count 46
In count 46 of his revised complaint, plaintiff brings an action which sounds somewhat like a negligence claim but to which the plaintiff gives no specific designation. The plaintiff does subtitle the alleged cause of action as "breach of duty with proximately caused damages" When questioned by the court as to the origin and/or recognized existence of such a cause of action, the plaintiff responded that he is unaware of any case in Connecticut which has recognized a similar cause of action. Since the plaintiff can not legitimately identify this cause of action for the court's review as to the proper pleading of each of its required elements, defendant UTC's motion to strike count 46 is granted.
IV. CONCLUSION
CT Page 6988
In sum, this court grants the defendant UTC's Motion to Strike as to counts 33, 35, 36 (wrongful discharge); 34 (protected speech); and count 46 (breach of duty with proximately caused damages). This court denies the defendant UTC's Motion to Strike as to counts 37, 38, 39 (breach of contract); count 42 (unjust enrichment); count 44 (negligent misrepresentation); and count 45 (illegal withholding of wages).
SUSAN B. HANDY JUDGE, SUPERIOR COURT